787 S.E.2d 546

**WHEELING PARK COMMISSION,**
Defendant Below, Petitioner,

v.

**Joseph DATTOLI and Kerry Dattoli, his wife, Plaintiffs Below, Respondents.**

**No. 14–1332**

Supreme Court of Appeals of West Virginia.

Submitted: January 20, 2016

Filed: June 2, 2016

Thomas E. Buck, Esq., Bruce M. Clark, Esq., Bailey & Wyant PLLC, Wheeling, West Virginia, Attorneys for Petitioner.

Jacob M. Robinson, Esq., Brent E. Robinson, Esq., Robinson Law Offices, Ronald W. Zavolta, Esq., Zavolta Law Offices, Wheeling, West Virginia, Attorneys for Respondents.

Benjamin, Justice:

Petitioner and defendant below, Wheeling Park Commission (the "Commission"), appeals the Circuit Court of Ohio County's denial of its motion for a judgment as a matter of law in a negligence action brought against the Commission by the respondents and plaintiffs below, Joseph Dattoli and Kerry Dattoli. The Commission also appeals the circuit court's December 3, 2014, order that awarded the Dattolis a new trial limited to

the issue of damages for Joseph Dattoli's past pain and suffering. After considering the parties' arguments, the applicable law, and the appendix in this case, this Court finds that the circuit court erred in denying the Commission's motion for judgment as a matter of law.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from an incident which occurred on September 1, 2007, at Oglebay Park Resort and Conference Center ("the Park") in Ohio County. Joseph Dattoli and his wife, Kerry Dattoli, were attending activities at the Park when Mr. Dattoli leaned against a split rail fence on the park grounds. Prior to doing so, Mr. Dattoli glanced at the fence to ensure that the parts of the fence were attached. As Mr. Dattoli leaned against a post of the fence and put his hand on the top rail, the end of the top rail broke into several pieces causing Mr. Dattoli to fall down a hill and injure his shoulder. Consequently, the Dattolis brought a negligence claim against the Commission which maintains the Park.

The Dattolis adduced evidence at trial that Mr. Dattoli suffered a rotator cuff tear that required surgical repair. There also was evidence that following surgery, Mr. Dattoli went through months of physical therapy and missed six months of work. Additional evidence was presented regarding the effect of Mr. Dattoli's injury on the respondents' marriage and finances.

Further, the Dattolis presented the testimony of the Commission's corporate designee, John Hargleroad, the Director of Operations at the Park since 1990. According to Mr. Hargleroad, the fence in question was installed at some point between the 1970s and the 1990s. In addition, Mr. Hargleroad testified that the Commission produced no records or documents in response to the Dattolis' request for repair and maintenance records regarding the fence. Additionally, in testifying regarding Defense Exhibit 17

which was several pieces of the broken fence, Mr. Hargleroad indicated it was his understanding that it was the piece of the fence that disengaged causing Mr. Dattoli's fall. Moreover, Mr. Hoagleroad testified that he understood that wood has a life expectancy. Finally, Mr. Hargleroad testified that the Park was in a better position to ensure that the fence was in a state of good repair than a guest of the Park.

At the close of the Dattolis' case, the Commission moved for judgment as a matter of law based on insufficient evidence of the Commission's duty with regard to maintenance of the fence and breach of that duty. The circuit court denied this motion, and the case was submitted to the jury. The Commission presented no witnesses in its case in chief. Subsequently, the jury returned a verdict in which it awarded the Dattolis $36,894.47 in past medical expenses and $19,000 in past lost wages. The jury awarded nothing for all other forms of damages including but not limited to past pain and suffering.

By order dated September 2, 2014, the circuit court entered judgment for the Dattolis based on the jury's verdict. Thereafter, the Dattolis filed a motion for a new trial arguing that the jury's verdict was insufficient. By order dated December 3, 2014, the circuit court granted the Dattolis a new trial only on the amount of damages for Mr. Dattoli's past pain and suffering. The Commission now challenges the circuit court's denial of its motion for judgment as a matter of law and the circuit court's order that granted the Dattolis a new trial only on the issue of damages.

## II. STANDARD OF REVIEW

▇▇▇▇ In this appeal, the Commission calls upon this Court to review the circuit court's denial of its pre-verdict motion for judgment as a matter of law pursuant to Rule 50(a) of the West Virginia Rules of Civil Procedure. This Court applies "a *de novo* standard of review to the . . . denial of a pre-

---

1. The Park Commission refers to its motion at the close of the evidence as a motion for a directed verdict. However, in Rule 50(a) of the West Virginia Rules of Civil Procedure, the term

"directed verdict" has been replaced with the phrase "judgment as a matter of law." Therefore, in this opinion we refer to the Commission's motion as one for judgment as a matter of law.

verdict ... motion for judgment as a matter of law." *Gillingham v. Stephenson*, 209 W.Va. 741, 745, 551 S.E.2d 663, 667 (2001). We also have indicated that a motion for "judgment as a matter of law should be granted at the close of the evidence when, after considering the evidence in the light most favorable to the nonmovant, only one reasonable verdict is possible." *Waddy v. Riggleman*, 216 W.Va. 250, 255, 606 S.E.2d 222, 227 (2004), quoting *Yates v. University of West Virginia Bd. of Trs.*, 209 W.Va. 487, 493, 549 S.E.2d 681, 687 (2001). In addition, "[u]pon a motion for [pre-verdict judgment as a matter of law], all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." Syl. pt. 5, *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973). It has been explained that

> in reviewing a motion for judgment as a matter of law, a court should (1) resolve direct factual conflicts in favor of the non-movant, (2) assume as true all facts supporting the nonmovant which the evidence tended to prove, (3) give the nonmovant the benefit of all reasonable inferences, and (4) deny the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* § 50(a)(1), at 1108 (4th ed. 2012) (footnote omitted). Nevertheless, "[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right of recovery, the trial court should direct a verdict in favor of the defendant." Syl. pt. 3, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964). With these standards to guide us, we turn to the issues presented on appeal.

## III. ANALYSIS

■ In its first assignment of error, the Commission asserts that the circuit court erred in denying its pre-verdict motion for judgment as a matter of law because the Dattolis failed to present *prima facie* evidence of duty and a breach of duty in order to have the issue of liability submitted to the jury under our negligence law. The Commission explains that the Dattolis presented two theories of negligence below. The first theory dealt with the maintenance of the fence that broke and injured Mr. Dattoli. The second theory of negligence was that the Commission did not provide adequate seating in the area surrounding the site of the subject accident. As a result, Mr. Dattoli leaned against the fence which subsequently broke.

■ Regarding the Dattolis' allegation of negligence in maintaining the fence, the Commission contends that the Dattolis failed to adduce any evidence whatsoever of what action a reasonable park commission should take in order to maintain a split rail fence. According to the Commission, the Dattolis presented no evidence of what the Commission should have done differently in maintaining the subject fence. In other words, avers the Commission, no witness testified as to how the Commission's maintenance of the fence was improper or insufficient or what alternative maintenance should have been undertaken to ensure that the fence would not break.[2]

The Dattolis counter that they presented sufficient evidence that the Commission owed them a duty regarding the maintenance of the fence, and that the Commission breached that duty. According to the Dattolis, the

---

**2.** The Commission also asserts that the Dattolis were required to present expert testimony in order to establish the Commission's duty to Mr. Dattoli. We find it unnecessary to address this argument in order to properly decide this case.

Likewise, this Court finds it unnecessary to address the issue regarding the Dattolis' second theory of negligence below. At trial, the Dattolis claimed that the Commission did not provide adequate seating at the site of Mr. Dattoli's injury and as a result Mr. Dattoli leaned against the fence. In its petition, the Commission asserts that there was clear evidence presented at trial that

there were benches located in the area. In addition, the circuit court found in its order granting the Dattolis a new trial that "there were benches in the area of the park where the plaintiff was injured." In any case, the Dattolis fail to address the issue of seating in their brief to this Court. Therefore, we will assume that the Dattolis agree with the Commission's view of the seating issue. *See* W. Va. R. App. P. 10(d) ("If the respondents' brief fails to respond to an assignment of error, the Court will assume that the respondent agrees with the petitioner's view of the issue.").

Commission's duty regarding the maintenance of the fence is set forth in W. Va. Code § 29–12A–4(c)(2)–(4) (1986), and they contend that they clearly established at trial that the Commission breached this duty. The Dattolis further disagree with the Commission's claim that they presented no evidence to support a finding of liability. The Dattolis point to evidence that Mr. Dattoli simply leaned against the fence post, and a portion of the fence immediately broke causing Mr. Dattoli to fall. Moreover, the Dattolis assert that the testimony of Mr. Hargleroad is more than sufficient for a finding of liability against the Commission. The Dattolis conclude that Mr. Hargleroad's testimony, taken as a whole, makes it clear that the Commission breached its duty to the Dattolis by failing to keep the fence in good repair.

 This Court finds that the Dattolis failed to present a prima facie case of negligence and, as a result, the circuit court erred in denying the Commission's motion for judgment as a matter of law. Our laws governing negligence claims are well-settled. This Court has explained that to prevail in a negligence suit "it is incumbent upon the plaintiff to establish, by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes him; (2) A negligent breach of that duty; (3) injuries received thereby, resulting proximately from the breach of that duty." *Webb v. Brown & Williamson Tobacco Co.*, 121 W.Va. 115, 118, 2 S.E.2d 898, 899 (1939) (citations omitted). We held in syllabus point 1 of *Parsley v. General Motors Acceptance Corp.*, 167 W.Va. 866, 280 S.E.2d 703 (1981), "In order to establish a *prima facie* case of negligence in West Virginia, it must be shown that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff. No action for negligence will lie without a duty broken." In other words, "[l]iability of a person for injury to another cannot be predicated on negligence unless there has been on the part of the person sought to be charged some omission or act of commission in breach of duty to the person injured." Syl. pt. 6, *Morrison v. Roush*, 110 W.Va. 398, 158 S.E. 514 (1931).

 In addition, this Court has recognized that "[n]egligence is the violation of the duty of taking care under the given circumstances. It is not absolute; but is always relative to some circumstances of time, place, manner, or person." Syl. pt. 1, *Dicken v. Liverpool Salt & Coal Co.*, 41 W.Va. 511, 23 S.E. 582 (1895). Significantly,

[t]he ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result if it is not exercised. The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?

Syl. pt. 3, *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988). In the instant case, the test would be whether an ordinary park commission in the petitioner's position, knowing what it knew or should have known, should have anticipated the harm of the general nature that Mr. Dattoli suffered when he leaned against the fence.

This Court previously has indicated that before an owner of land may be held liable for negligence, "he must have had actual or constructive knowledge of the defective condition which caused the injury." *Hawkins v. U.S. Sports Ass'n.*, 219 W.Va. 275, 279, 633 S.E.2d 31, 35 (2006); *accord Neely v. Belk Inc.*, 222 W.Va. 560, 571, 668 S.E.2d 189, 199 (2008). This means in the instant case that the Dattolis had to present evidence that the Commission had actual or constructive knowledge of the defect in the fence. Our review of the pleadings indicates that the Dattolis failed to present such evidence. The Dattolis cite to no evidence in the appendix that the Park Commission had actual knowledge that the fence was defective. Regarding constructive knowledge, the Dattolis cite to no evidence that the defect in the fence was obvious in nature. Actually, there is evidence to the contrary in that prior to his fall, Mr. Dattoli glanced at the fence to ensure that it was safe to lean on, and then proceeded to lean on it. Likewise, the Dattolis point to no evidence that other persons were injured by a defect in the fence prior to Mr. Dattoli's injury so as to provide notice to the Commission of the defect. Further, the circuit court found in its order granting the Dattolis a new trial on the issue of damages that "[t]here

was no evidence that the defendant had any notice that the fence was flawed or needed any repair." While the Dattolis point to Mr. Hargleroad's testimony that the fence was installed sometime between the 1970s and the 1990s, this fact alone is insufficient under our law for a jury to infer that the Commission should have been aware of a defect in the fence.[3]

The Dattolis also rely on W. Va. Code § 29–12A–4(c)(2)–(4), which provides as follows:

(2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.

(3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

According to the Dattolis, this Court's decision in *Carrier v. City of Huntington*, 202 W.Va. 30, 501 S.E.2d 466 (1998), indicates that injuries occurring on public property are governed not by premises liability principles but by the specific provisions of W. Va. Code § 29–12A–4(c). The Dattolis posit that their cause of action against the Commission was statutorily created, and the statute at issue sets forth duties owed by the Commission to the Dattolis. The Dattolis conclude that the Commission breached the statutory duty that it owed to them.[4]

This Court finds that the Dattolis' reliance on W. Va. Code § 29–12A–4(c) and *Carrier* is misplaced. The standard for liability set forth in W. Va. Code § 29–12A–4(c) is, by its plain terms, a negligence standard. In other words, for a plaintiff to prevail in a claim brought against a political subdivision under W. Va. Code § 29–12A–4(c), the plaintiff still must prove the elements of negligence. When this Court opined in *Carrier* that ordinary premises liability principles do not apply to a claim brought under W. Va.

---

**3.** For example, in *Hovorka v. Minneapolis & St. L. Ry. Co.*, 34 Minn. 281, 25 N.W. 595 (1885), the owner of two colts killed by the defendant railroad's train brought a negligence action against the railroad arguing that the fence maintained by the railroad was negligently maintained, allowing the colts to escape and be killed. The only issue in *Hovorka* was "whether there is evidence reasonably tending to show negligence on defendant's part as to maintaining the [fence] bars and keeping them in repair." *Id.* at 595. In finding that there was sufficient evidence of negligence, the court explained:

The evidence shows that the fence, of which the bars were part, had at the time the colts were killed been built about six years; that the bars were poplar poles, "chopped on the side," of about two inches diameter at one end, and four at the other; that they were about four feet high; and that on the morning after the killing the two top poles or bars were found broken, and to be half rotten.

Now, considering the well-known tendency of poplar poles of this kind to speedy decay;

that these had been in use about six years without, as is fairly to be inferred, receiving any attention from the company; that they were, in fact, half rotten, and were found broken; and that there is nothing in the case tending to show that they were broken by any other means by the colts, it cannot be said that there was not evidence having a reasonable tendency to show negligence on the party of the company as respects its duty to maintain the fence.

*Id.* at 596.

Unlike the facts in *Hovorka*, the Dattolis cite no evidence from the record regarding the type of wood of which the fence was made, the life expectancy of that type of wood, or the purpose of the fence. For example, there is no evidence regarding whether the fence was intended to support an adult's weight or whether its purpose was to mark a boundary or simply for decoration.

**4.** The parties do not dispute that the Commission is a political subdivision under W. Va. Code § 29–12A–3(c) (1986).

Code § 29–12A–4(c), we were referring specifically to the fact that the law imposed different duties of care on possessors of premises with regard to whether a person on private property is an invitee, licensee, or trespasser. Therefore, *Carrier* simply stands for the fact that these distinctions do not apply to claims brought against political subdivisions under W. Va. Code § 29–12A–4(c).[5] As we explained in *Carrier*, "[t]he reason for not applying premises liability principles to actions under W. Va. Code § 29–12A–4(c)(3) ... is that the statute[ ] do[es] not expressly provide for the distinctions contained in premises liability principles." 202 W.Va. at 33–34, 501 S.E.2d at 469–70 (footnote omitted).

■■■■ The statute does, however, expressly provide that the traditional elements of negligence apply in actions brought for injuries incurred on the property of political subdivisions. By its plain terms, the statute requires a plaintiff bringing suit against a political subdivision for injury on its premises to prove that the injury was the result of *"negligent* performance," *"negligent* failure," and *"negligence"* of the political subdivision or its employees. This Court has held that "[i]n the absence of any specific indication to the contrary, words used in a statute will be given their common, ordinary and accepted meaning." Syl. pt. 1, *Tug Valley v. Mingo Cty. Comm'n*, 164 W.Va. 94, 261 S.E.2d 165 (1979). The common meaning of the word "negligence" is well established in our law.

Further, we note that W. Va. Code § 29–12A–4(c) is a part of the Tort Governmental Claims and Insurance Reform Act, the purposes of which are "to limit liability of political subdivisions and provide immunity to political subdivisions in certain instances and to regulate the costs and coverage of insurance available to political subdivisions for such

liability." W. Va. Code § 29–12A–1 (1986). Considering these purposes, there is no basis for a finding that W. Va. Code § 29–12A–4(c) reduces a plaintiff's evidentiary burden in proving the negligence of a political subdivision under the statute.

■■■■ Finally, "a statute that is clear and unambiguous will be applied and not construed." Syl. pt. 1, in part, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). The statute at issue, W. Va. Code § 29–12A–4(c) clearly makes a political subdivision or its employees liable for their *"negligent* failure to keep ... public grounds within the political subdivisions ... in repair." It is clear from this language that a person who brings a claim against a political subdivision alleging that the injury was caused by the political subdivision's failure to keep its grounds in repair must prove that the failure resulted from negligence. Otherwise, the Legislature would have omitted the word "negligent" and simply made a political subdivision liable for injuries caused by a failure to keep its grounds in repair. Thus, it is clear under the statute that a political subdivision is liable under W. Va. Code § 29–12A–4(c), as a private person would be, for injuries to persons that are proximately caused by the political subdivision's negligence in the performance of functions enumerated in W. Va. Code § 29–12A–4(c)(2)–(4). Accordingly, we find that the Dattolis' argument that they proved the Commission's liability for Mr. Dattoli's injury under W. Va. Code § 29–12A–4(c)(2)–(4) must fail.[6]

### III. CONCLUSION

For the reasons set forth above, this Court concludes that the Dattolis failed to establish a prima facie case of negligence by adducing no evidence that the Park Commission knew

---

5. This Court has abolished the traditional distinction between licensees and invitees in premises liability law. Specifically, in syllabus point 4 of *Mallet v. Pickens*, 206 W.Va. 145, 522 S.E.2d 436 (1999), we held:

> The common law distinction between licensees and invitees is hereby abolished; landowners or possessors now owe any non-trespassing entrant a duty of reasonable care under the circumstances. We retain our traditional rule with regard to a trespasser, that

being that a landowner or possessor need only refrain from willful or wanton injury.

6. In its second assignment of error, the Park Commission alleges error in the circuit court's granting of the Dattolis' motion for a new trial on the issue of damages only. Because of our disposition of the Park Commission's first assignment of error, the second assignment of error is now moot.

or should have known of the defect in the fence that allegedly caused Mr. Dattoli's injury. Under our law, "[w]hen the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recovery, the trial court should direct a verdict in favor of the defendant." Syl. pt. 3, *Roberts v. Gale*, 149 W.Va. 166, 139 S.E.2d 272 (1964). In light of the Dattolis' failure to establish a prima facie case of negligence, we find that the circuit court erred in denying the Commission's motion for judgment as a matter of law at the close of the evidence. Therefore, we reverse the September 2, 2014, order of the Circuit Court of Ohio County that granted judgment in favor of the Dattolis and its December 3, 2014, order that granted the Dattolis a new trial on the issue of damages.

Reversed.

JUSTICE DAVIS and JUSTICE WORKMAN dissent and reserve the right to file dissenting opinions.

Davis, Justice, dissenting, joined by Justice Workman:

This was a simple case in which the court was asked to decide whether the Dattolis made out a *prima facie* case of negligence against the Commission. In resolving this issue, the majority of the court found a distressing way to blur the lines between legal principles that apply to premises liability causes of actions and actions for injury on property owned by political subdivisions. In doing so, the majority opinion found that the trial court erred in denying the Commission's motion for judgment as a matter of law at the close of the Dattolis' case-in-chief. For the reasons set out below, I respectfully dissent.

1. The Park is maintained by the Commission. *See Wheeling Park Comm'n v. Hotel & Rest. Emps., Int'l Union, AFL-CIO*, 198 W.Va. 215, 218, 479 S.E.2d 876, 879 (1996) ("[T]he Wheeling Park Commission ... was formed in 1925 in order to manage municipal parks acquired by the City of Wheeling.").

2. Mrs. Dattoli's family had a family reunion at the Park annually. Mrs. Dattoli's grandfather was a carpenter and helped build many of the facilities at the Park. Further, it appears that the Park

## A. Relevant Facts

Ordinarily I would begin my dissent by going to the merits of my disagreement with the majority opinion. However, to properly understand the legal unsoundness of the majority opinion, I am compelled to start with a recitation of the underlying facts.

The facts of this case began at around noon, on September 1, 2007, at Oglebay Park Resort and Conference Center ("the Park") in Wheeling, West Virginia.[1] At that time, the Dattolis were attending a family reunion at the Park. The family reunion was being hosted by Mrs. Dattoli's family.[2] Also on that date, the Park was holding an event that was called Fort Henry Days. As a result of this special event, there were a number of amusement attractions, including carnival rides, set up throughout the Park.

After the family members had lunch, Mr. Dattoli accompanied his daughter, son, and daughter-in-law for a walk to view some of the attractions at the Park.[3] At some point, Mr. Dattoli stopped at an area near a wooden fence to watch some amusement events, including his daughter's attempt to ascend a rock climbing wall. It appears that Mr. Dattoli's back was to the fence when he attempted to lean against it. As Mr. Dattoli placed his buttocks on the fence and when he reached back to place one of his hands on the fence, the fence broke suddenly, and he fell backwards down a hill. As a result of the fall, Mr. Dattoli sustained a left shoulder, full thickness, rotator cuff tear that required surgery to repair.[4]

In 2009, the Dattolis filed this action against the Commission to recover for the damages caused by the accident.[5] After extensive discovery, the case was presented to a jury in August 2014. During the trial, both Dattolis testified. They also called their for-

allowed her grandfather and his family to live in a house in the Park.

3. Both of Mr. Dattoli's children were adults at the time of the incident.

4. Mr. Dattoli's surgeon described this type of injury as "something where the tendon is completely torn off the bone[.]"

5. Mrs. Dattoli's claim was for loss of consortium.

mer daughter-in-law, who actually witnessed the fall, to inform the jury of how the accident occurred. They also called their son to testify about the impact of the injury on the family. The Dattolis put on a video deposition of the physician who treated Mr. Dattoli for his injured shoulder. Additionally, they called John Hargleroad ("Mr. Hargleroad"), the director of operations for the Park. Mr. Hargleroad was called as an adverse witness. Mr. Hargleroad testified that the Park's wooden fence was installed during the 1990s. Mr. Hargleroad stated that he did not know of the existence of any documents that would show repairs or maintenance was done on the fence since it was installed.[6] There also was testimony by Mr. Hargleroad that wood had a life expectancy (*i.e.*, decaying) and that the Park, not guests, was in a better position to make certain the fence was in good repair. Mr. Hargleroad also testified that the Park did not have any signs warning guests not to lean or sit on the fence. Although Mr. Hargleroad stated that Mr. Dattoli should not have leaned on the fence, there was no evidence showing that Mr. Dattoli did anything in violation of a Park rule that contributed to the accident.

At the close of the Dattolis' case-in-chief, the Commission moved the trial court for judgment as a matter of law. The motion was denied. The Commission thereafter rested without calling any witnesses. After the case was submitted to the jury, a verdict was returned awarding the Dattolis $36,894.47 for past medical bills and $19,000.00 for past lost wages. The jury did not award damages for any of the following items listed on the verdict form: past and future physical pain and suffering, past and future mental anguish and emotional pain, past and future loss of enjoyment of life, past and future loss of household services, permanency of injuries, and loss of consortium.

The Dattolis filed a post-trial motion for a new trial on damages. The trial court's order of November 27, 2014, denied the motion, in part, and granted the motion, in part. The order denied the motion for new trial for the following damages: future physical pain and suffering, future mental anguish and emotional pain, past and future loss of enjoyment of life, past and future loss of household services, permanency of injuries, and loss of consortium. The order awarded a new trial on damages for the following limited items: past physical pain and suffering and past mental anguish and emotional pain. The Commission subsequently filed this appeal.

### B. Denial of Motion for Pre–Verdict Judgment as a Matter of Law

The Commission argued on appeal that the trial court committed error in denying its motion for judgment as a matter of law at the close of the Dattolis' case-in-chief. It is clear from a review of the Commission's appeal brief and reply brief that the Commission failed to understand the basis of liability in this case. The Commission viewed the case as being grounded on common law premises liability principles. The majority opinion accepted this argument. However, as I will demonstrate, our cases have developed distinct legal principles for premises liability and liability against political subdivisions. Insofar as the Commission did not dispute that it is a political subdivision, the decisions of this Court are clear in stating that premises liability principles simply do not apply to injuries sustained on property belonging to political subdivisions.

1. **Cause of action for injury on property of a political subdivision.** Contrary to the conclusion reached by the majority opinion, it was clearly stated in *Carrier v. City of Huntington*, 202 W.Va. 30, 33, 501 S.E.2d 466, 469 (1998), that "[t]his Court has never applied premises liability theories to personal injury claims arising from injury on public property. Injuries occurring on public property are governed by specific statutes."[7] Lia-

---

6. The Dattolis had requested such information from the Commission during discovery, but never received documents involving repair or maintenance of the fence.

7. In *Carrier*, an action was brought against the defendant, City of Huntington, under a specific statute that allowed political subdivisions to be

sued for injuries caused by defective roads, bridges, and streets. The defendant argued that the use of the word "negligence" in the statute permitted this Court to apply premises liability principles to the cause of action, in order to affirm the trial court's summary judgment order in favor of the defendant. We rejected the argu-

bility against the Commission as a political subdivision is found in W. Va. Code § 29–12A–4(c)(3) (1986) (Repl. Vol. 2013) of the Governmental Tort Claims and Insurance Reform Act.[8] We have explained this statute as follows:

> Under *W. Va. Code*, 29–12A–4(c)(3) [1986], political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or *public grounds within the political subdivisions open, in repair,* or free from nuisance[.][9]

Syl. pt. 3, in part, *Koffler v. City of Huntington*, 196 W.Va. 202, 469 S.E.2d 645 (1996) (emphasis and footnote added).[10] *See also* Syl. pt. 4, *Calabrese v. City of Charleston*, 204 W.Va. 650, 515 S.E.2d 814 (1999) ("The liability for political subdivisions created in W. Va. Code, 29–12–4(c)(3) [1986] includes liability for injury, death, or loss to persons or property caused by a subdivision's negligent failure to keep its sewers and drains open, in repair, or free from nuisance."), *modified on other grounds by Posey v. City of Buckhannon*, 228 W.Va. 612, 723 S.E.2d 842 (2012); *Stamper by Stamper v. Kanawha Cnty. Bd. of Educ.*, 191 W.Va. 297, 298–99, 445 S.E.2d 238, 239–40 (1994) ("Specifically, W. Va. Code, 29–12A–4(c)(3) and (4) (1986), permit liability claims to be filed against a political subdivision for injuries or death arising from the negligent failure to maintain its property.").

Under W. Va. Code § 29–12A–4(c)(3), the Commission had a duty to keep the Park in

---

ment by stating that "[w]e decline to rule that imposing a 'negligence' standard on local governments under W. Va. Code § 17–10–17, permits this Court to apply common law principles developed under premises liability." *Carrier v. City of Huntington*, 202 W.Va. 30, 34 n.6, 501 S.E.2d 466, 470 n.6 (1998).

8. The Commission asserted in its Reply brief that this statute has "no bearing on the elements of negligence or the evidentiary requirements associated therewith." According to the Commission, "a negligence claim against a political sub-division is governed by the same laws of negligence as claims filed against non-political subdivisions[.]" As mentioned previously, the Commission misunderstands the law in this area. Prior to enactment of the Governmental Tort Claims and Insurance Reform Act, this Court initially permitted political subdivisions to be sued under common law principles when a political subdivision was acting in a proprietary capacity, as opposed to a governmental capacity. *See* Syl. pt. 2, *Ashworth v. City of Clarksburg*, 118 W.Va. 476, 190 S.E. 763 (1937) ("A municipality acts as a proprietor in maintaining a public park. In this capacity, the municipality must exercise ordinary care, and is liable to one injured through a breach of that duty."); *See also Ward v. County Court of Raleigh Cnty.*, 141 W.Va. 730, 739–40, 93 S.E.2d 44, 49 (1956) ("[T]he operation of the lake property by the Raleigh County Park Board, at the time of the drowning of plaintiff's decedent, was proprietary, not governmental. We find no sound reason for holding a municipality liable for such operations and not holding a public corporation of the nature of the Raleigh County Park Board liable for the same type of operations. If the function is proprietary when performed by a municipality, it is proprietary when performed by such a corporation as the Raleigh County Park Board."). Ultimately, this Court permitted political subdivisions to be sued under

common law principles in both their governmental and proprietary capacities. *See* Syl. pt. 11, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975) ("A municipal corporation shall be liable, as if a private person, for injuries inflicted upon members of the public which are proximately caused by its negligence in the performance of functions assumed by it."). However, W. Va. Code § 29–12A–4(b)(1) (1986) (Repl. Vol. 2013) expressly provides that, except as provided in W. Va. Code § 29–12A–4(c), "a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *See also Zirkle v. Elkins Rd. Pub. Serv. Dist.*, 221 W.Va. 409, 414, 655 S.E.2d 155, 160 (2007) ("This provision of the Act suggests that political subdivisions ... are not liable for any acts with respect to both governmental and proprietary functions unless the acts complained of come within the specific liability provisions of W. Va. Code, 29–12A–4(c).").

9. *See also* W. Va. Code § 29–12A–4(c)(2) ("Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.").

10. The Dattolis noted in their brief that they tendered a jury instruction that specifically used language contained in W. Va. Code § 29–12A–4(c)(3). The jury charge in the record does not show that the trial court accepted the instruction. However, the manner in which the trial court instructed the jury on any issue in the case was not assigned as an error on appeal to this court.

repair—this would include the fence it erected on its property. Indeed, this Court long ago noted that "municipal corporations are under a duty of exercising reasonable care in the maintenance of parks and other public enterprises of like character[.]" *Warden v. City of Grafton*, 99 W.Va. 249, 256, 128 S.E. 375, 378 (1925). Consequently, under the statute, the Commission could "be liable for [Mr. Dattoli's] injuries if [he] can demonstrate that such injuries were caused by the [Commission's] negligent failure to keep the [fence] in repair[.]" *Koffler*, 196 W.Va. at 206, 469 S.E.2d at 649. *See also Adams v. United States*, 239 F.Supp. 503, 506 (E.D. Okla. 1965) ("[W]hen one is invited into a public park for health or recreation it is the duty of the proprietor of said park to exercise ordinary care to keep the premises in a reasonably safe condition for the benefit of persons lawfully using the same. This rule of law applies even though no admission is charged."); *City of Miami v. Ameller*, 472 So.2d 728, 729 (Fla. 1985) ("Our conclusion does not make the city an insurer of the safety of all who use its free public parks. A municipality does, however, have a duty to maintain its parks in a condition reasonably safe for public use."); *City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 413 (Ind. Ct. App. 1987) ("Here, Bloomington maintained Sherwood Oaks Park as a city park open to the general public. In doing so, Bloomington incurred a duty to design the park safely and keep it free from hazards."); *McGuire v. New Orleans City Park Imp. Ass'n*, 835 So.2d 416, 419–20 (La. 2003) ("The duty of a governmental agency or municipality operating a public park is held to keep the premises in a reasonably safe condition for those using the park and to discover any unreasonably dangerous conditions on the premises and to either correct the conditions or warn of the danger."); *City of Jackson v. Doe ex rel. J.J.*, 68 So.3d 1285, 1289 (Miss. 2011) (Kitchens, J., concurring) ("Thus, while the creation of a public park is a discretionary governmental function involving public policy consider-

ations, the City still has a duty to maintain the premises in a reasonably safe condition, and to protect and warn against known hazards."); *City of Anadarko v. Swain*, 42 Okla. 741, 142 P. 1104, 1105 (1914) ("The city owed to adults and children alike the duty of exercising ordinary care to avoid injuring them anywhere within the boundaries of the public park, and it cannot escape liability for the death of this child by drawing a distinction between the duties the city owed to the invitees at different points or portions of the park."); *Paraska v. Scranton*, 313 Pa. 227, 229, 169 A. 434, 435 (1933) ("We have uniformly permitted recovery for negligent maintenance of parks in a long series of cases.").

Having shown as a matter of law that the Commission had a statutory duty to maintain the fence "in repair," the next step in the analysis is to determine whether the Dattolis presented a *prima facie* case of negligence in breaching that duty and causing injury to Mr. Dattoli.

**2. The Dattolis presented a *prima facie* case of the Commission's breach of its duty to keep its fence in repair.** The evidence in this case clearly showed that the Commission did not have any signs or other warnings informing patrons of the Park to not lean on its fence. Mr. Dattoli provided undisputed testimony that he looked at the fence before he leaned on it, and that the fence looked safe. There also was undisputed testimony that, when Mr. Dattoli leaned his buttocks and hand against the fence, the fence broke. There was no evidence that Mr. Dattoli did anything wrong to cause the fence to break.[11] The evidence revealed without dispute that the Dattolis sought, through discovery, to obtain all pertinent records involving the creation and maintenance of the fence by the Commission. The Commission failed to provide any such records. During the trial, the Commission's director of operations for the Park, Mr. Hargleroad, testified essentially that no such records existed.[12]

11. The Commission argued that Mr. Dattoli was wrong in leaning against the fence. The jury rejected this argument by finding the Commission one hundred percent at fault in causing the accident.

12. During the examination of Mr. Hargleroad by the Dattolis' counsel, the following exchange occurred regarding maintenance of the fence:

Q. You see where we asked [during discovery], at least in part, to describe any care,

Mr. Hargleroad also testified that the wooden fence was placed in the Park in 1990 and that wood had a life expectancy. Mr. Dattoli presented undisputed evidence that, as a result of the fence breaking and causing him to fall, he sustained a severe shoulder injury that required surgery. This evidence was sufficient to establish a *prima facie* case of negligence under the statute. That is, the Dattolis' evidence "warranted an inference of negligence on the part of [the Commission] such as entitled the [Dattolis] to have the issue determined by the jury and not determined by the directed verdict." *Jenkins v. Chatterton*, 143 W.Va. 250, 255, 100 S.E.2d 808, 810 (1957). *See also Nuclear Corp. of Am. v. Lang*, 480 F.2d 990 (8th Cir. 1973) (finding evidence sufficient to infer that accident occurred due to defendant failing to maintain fence in a proper state of repair); *Serbalik v. State*, 204 Misc. 2, 123 N.Y.S.2d 212, 215 (1954) ("It was the duty of the State to keep this campsite and its amusement apparatus, including the swings, in a reasonably safe condition for the intended use. The circumstances under which this swing broke established prima facie evidence of negligence."); *Kelley v. Barrett*, 897 P.2d 289, 291 (Okla. 1995) ("Plaintiff's evidence was sufficient to support an inference that when Plaintiff struck Defendant's horse on 89th Street, the horse was there because it had escaped by reason of Defendant's negligently maintained fence."); *Reed v. Clark*, 277 S.C. 310, 286 S.E.2d 384 (1982) (finding evidence of negligent failure to maintain fence suffi-

cient to deny defendant motion for directed verdict).

The Commission was required to present some evidence to rebut this *prima facie* case. *See Laphew v. Consol. Bus Lines*, 133 W.Va. 291, 299, 55 S.E.2d 881, 886 (1949) ("[A] prima facie case, of course, does not always stand up when evidence tending to rebut is introduced[.]"); Syl. pt. 7, in part, *Fairview Fruit Co. v. H.P. Brydon & Bro.*, 85 W.Va. 609, 102 S.E. 231 (1920) ("When such facts are proven, the burden is cast upon defendant to rebut the presumption[.]"). The Commission failed to put on a case-in-chief to rebut the Dattolis' *prima facie* case. No evidence was presented by the Commission to show that the fence was in fact in good repair at the time of the accident, or that it was ever specifically inspected for safety reasons after it was installed. The Commission also failed to present any evidence that Mr. Dattoli violated any Park rule by leaning against the fence. In the absence of any evidence rebutting the Dattolis' *prima facie* case, the trial court properly denied the Commission's pre-verdict motion for judgment as a matter of law. *See Lambert v. Metro. Transit Auth.*, 339 Mass. 94, 96, 157 N.E.2d 869, 871 (1959) ("It was for the jury to determine whether the defendant failed in its duty of care to users of its passageway and if the condition of the fence was found due to negligent maintenance[,] whether the injury to the boy was caused by such condition."). Indeed, our law is quite clear in holding that "[o]rdinarily the question as to whether a *prima facie* case

safety monitoring, repair of the split rail fence at issue?

A. Yes.

Q. And then tell the—answer—if I can read it. Let me read it. "Defendants will look to see [if] there are any documents responsive to the request." That's the answer, right?

A. Yes.

Q. Are you aware of any documents that you could provide that would help us know what monitoring, what repair, was done of this particular split rail fence.

A. No.

Q. Okay. And then go to No. 13. It's at page seven. And that question, correct me if I'm wrong, basically, just asks, "Please tell us as to the split rail fence at issue on September 1, 2007, tell us what repair took place from the time of purchase, assembly, installation, up until the incident"; right?

A. That's correct.

Q. And you folks indicate, am I correct, this is your answer, "The Defendants will search for any documents responsive to the request"; right?

A. That's right.

Q. Any you don't know of any; is that right?

A. I don't know of any.

. . . .

Q. And the point of this is: You folks didn't have any sign up that said, "Don't lean on the fence rail"; did you?

A. That's correct.

Q. You didn't have any caution tape saying, you know, "Stay away from the split rail fence"; did you?

A. No.

made by a plaintiff by circumstantial evidence has been overcome by direct testimony of the defendant in conflict therewith is for the jury." Syl. pt. 2, *Webb v. Harrison*, 127 W.Va. 124, 31 S.E.2d 686 (1944). *See also* Syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964) ("Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them.").

It is clear to me that the majority opinion reached a result that is contrary to our law regarding the liability of a political subdivision for breaching its duty to maintain its property in repair. Compounding its error, the majority opinion further has heightened the standard for making out a *prima facie* case of negligence in general.

In view of the foregoing, I dissent. I am authorized to state that Justice Workman joins me in this dissenting opinion.